IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM SEXTON,                          *

    Plaintiff,                           *

v.                                       *            Civil Action No. GLR-24-1192

NORTHROP GRUMMAN
SYSTEMS CORP.,                           *

    Defendant.                           *

*** 

## MEMORANDUM OPINION

THIS MATTER is before the Court on Northrop Grumman Systems Corporation's ("Northrop Grumman") Motion to Partially Dismiss Plaintiff's Complaint (ECF No. 6). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant the Motion.

## I.    BACKGROUND[1]

### A.    Factual Background

Plaintiff William Sexton is an approximately sixty-year-old white, male, disabled veteran who "suffers ongoing problems due to his service-related injuries." (Compl. ¶ 3, ECF No. 1). Sexton is also a Jehovah's Witness. (Id.). Sexton has been employed as a Senior Computer Systems Analyst by Northrop Grumman since October 19, 2001. (Id.).[2]

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[2] Sexton has been employed by Northrop Grumman Systems Corporation, not by Northrop Grumman Corporation as stated in his Complaint. (Def.'s Mem. Supp. Mot. Partially Dismiss ["Mot."] at 6 n.1, ECF No. 6-1). This was corrected in Sexton's

Northrop Grumman is an aerospace and defense company with over 90,000 employees. (Id. ¶¶ 4, 8). Sexton alleges that since he began working at Northrop Grumman in 2001, he has faced "on-going" discriminatory conduct. (Id. ¶ 14).

Sexton requested an ergonomic work chair and stand-up desk in 2014 and 2017. (Compl. ¶ 17). Sexton also requested to work from home. (Id. ¶ 16). His manager, Al Vanskiver, denied his requests. (Id. ¶¶ 16–18). Vanskiver allegedly cited Sexton's involvement with classified materials as the reason he could not work from home, even though Sexton did not work with classified materials and similarly situated employees were permitted to work from home.[3] (Id. ¶ 16). Following these requests, Vanskiver allegedly started treating Sexton in a "hostile and controlling manner," including denying him access to trainings and "overlook[ing] [him] for career advancement opportunities" available to his similarly situated, younger colleagues. (Id. ¶¶ 19–21, 56).

In October 2017, Sexton was reassigned to a new program as a Systems Administrator ("SA"). (Id. ¶ 22). On March 21, 2018, Sexton learned during a conversation with colleagues that his salary was classified at the SA level 3 scale, not the SA level 4 position he was hired for five years earlier, which Sexton alleges resulted in a substantial pay discrepancy. (Id. ¶ 26). After learning of this discrepancy, Sexton reached out to management and other colleagues. (Id. ¶ 27).

---

subsequent filing. (See Pl.'s Opp'n Def.'s Mot. Partially Dismiss ["Opp'n"] at 1, ECF No. 7-1).

[3] It appears that Sexton was eventually assigned a teleworking position, the timing of which is unclear. (See Compl. ¶ 16, ECF No. 1).

In April 2019, Sexton was reassigned again to a new project which required him to "do extensive walking" and "added to the significant physical demands of his job." (Id. ¶¶ 28–29). Given Sexton's disability, the physical demands of this new role were "even more challenging." (Id. ¶ 29). During this period, Sexton continued to wait for Northrop Grumman to provide an ergonomic work chair and stand-up desk. (Id. ¶ 30).

On August 6, 2020, Sexton's manager issued him a Memorandum of Expectations ("MOE") that negatively portrayed Sexton's job performance. (Id. ¶¶ 33–34). After receiving this negative evaluation, Sexton contacted Human Resources ("HR") to formally file a complaint alleging retaliation and harassment. (Id. ¶ 36).[4] Sexton also requested to be assigned a new manager. (Id.). HR "dismissed" Sexton's complaint and suggested he meet with his current manager to discuss the MOE. (Id. ¶ 37). No such meeting was held. (Id.). In December 2020, Sexton received his year-end performance review. (Id. ¶ 45). Despite Sexton's earlier annual evaluations being "consistently positive," Sexton was deemed an "inconsistent performer." (Id. ¶¶ 45–46). Sexton alleges there is a retaliatory link between his complaint to HR and this "sudden" change in his rating. (Id. ¶ 47).

In May 2021, Sexton received a $17,000 salary increase from Northrop Grumman without explanation. (Id. ¶¶ 31–32). Sexton believes this increase was "prompted by his inquiries," and that he had previously been intentionally underpaid. (Id. ¶ 32).[5] In

---

[4] Sexton later refers to this complaint to HR as an "EEO" complaint, however it was not a formal charge with the Equal Employment Opportunity Commission ("EEOC"). The Court will reserve the EEOC complaint designation for Sexton's formal charge and instead refer to these earlier internal complaints as HR Complaints. (Compl. ¶¶ 36, 47)

[5] Sexton also alleges he was deprived of the opportunity given to others to negotiate pay. (Compl. ¶ 57).

September 2021, Sexton contacted HR again to ask about the discrepancy in his pay. (<u>Id.</u> ¶ 39). HR confirmed Sexton's classification as an SA level 4 for the last eight years even though at the time his salary was "was lower than the maximum salary for an SA level 3." (<u>Id.</u> ¶ 40).

On October 11, 2021, Sexton contacted HR again to file a complaint about the harassment he was experiencing and to request a transfer to new management. (<u>Id.</u> ¶ 42).[6] Sexton spoke via telephone with an Employee Relations Advisor at Northrop Grumman about his concerns with his current management team. (<u>Id.</u> ¶ 43). Sexton emphasized that he felt discriminated against because of his disability, age, and religious beliefs as a Jehovah's Witness. (<u>Id.</u> ¶ 43). Sexton did not receive any further communications following this call, nor was he transferred. (<u>Id.</u> ¶¶ 44, 53). Later that year, Sexton was again rated an "inconsistent performer." (<u>Id.</u> ¶¶ 45, 47).

In late 2023, Northrop Grumman issued Sexton an ergonomic chair and stand-up desk. (<u>Id.</u> ¶ 15, n.1). Sexton alleges that he was still denied a reasonable accommodation because his now remote position prevented him from using the desk and chair in the office. (<u>Id.</u>) Around this time, Sexton was again rated an "inconsistent performer" in his yearly review. (<u>Id.</u> ¶ 47).

---

[6] Again, Sexton characterizes this internal complaint to HR as an EEO complaint. It is unclear if Sexton was aware at this time that this complaint was not a formal EEOC charge.

B.    **Procedural History**

On or about June 11, 2023, Sexton filed a charge with the Equal Employment Opportunity Commission ("EEOC").[7] (EEOC Charge at 2, ECF No. 6-2).[8] This charge raised claims related to Sexton's disability, specifically for Northrop Grumman's failure to accommodate and for retaliation based on his request for accommodation. (Id. at 2–4). Sexton's charge noted the earliest date discrimination took place to be October 6, 2022 and the latest April 13, 2023. (Id. at 2). On April 19, 2024, the EEOC issued Sexton a Determination and Notice of Rights ending the investigation without a decision on the merits and informing Sexton of his right to sue. (See Pl.'s Opp'n Def.'s Mot. Partially Dismiss ["Opp'n"] at 5, ECF No. 7-1).

On April 23, 2024, Sexton, filed his Complaint in this Court against Northrop Grumman. (ECF No. 1). The Complaint alleges: religious discrimination in violation of Title VII and the Maryland Fair Employment Practices Act ("FEPA") (Count I)[9]; age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and FEPA (Count II); employment retaliation in violation of Title VII and FEPA (Count III); failure to accommodate a disability in violation of the Americans with Disabilities Act ("ADA") and FEPA (Count IV); and hostile work environment (Count V)[10]. (Compl. ¶¶ 14,

---

[7] This was the first formal charge of employment discrimination filed by Sexton. All prior complaints were internal to Northrop Grumman's Human Resources department.

[8] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[9] The counts are not numbered in the Complaint. The Court adds this numbering here for clarity.

[10] Northrop Grumman disputes whether a hostile work environment claim was raised in the Complaint, which is discussed below. See supra Part II.B.3.

32, 38, 53). On June 24, 2024, Northrop Grumman filed the instant Motion to Partially Dismiss Sexton's Complaint. (ECF No. 6). Sexton filed his Opposition on July 8, 2024, (ECF No. 7), and Northop Grumman filed a Reply on July 22, 2024, (ECF No. 8).

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. <u>Goss v. Bank of Am., N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.    Analysis**

Northrop Grumman moves for partial dismissal of the Complaint on three grounds. First, Northrop Grumman argues that Sexton failed to exhaust administrative remedies with respect to his discrimination and retaliation claims based on age or religion (Counts I–III). (Def.'s Mem. Supp. Mot. Partially Dismiss ["Mot."] at 9–11, ECF No. 6-1). Second, Northrop Grumman contends that Sexton failed to timely exhaust his disability-related claims arising prior to August 2022 (Count IV). (Mot. at 11–13). Third, Northrop Grumman argues that Sexton failed to raise a claim for hostile work environment in both his Complaint and EEOC charge (Count V). (Def.'s Reply to Pl.'s Opp'n to Mot. Partially Dismiss ["Reply"] at 5–7, ECF No. 8). For the reasons stated herein, Northrop Grumman's Motion will be granted in its entirety.

Before a plaintiff may file suit under Title VII, the AEDA, or the ADA, he is required to exhaust his administrative remedies by filing a charge of discrimination with the EEOC.

7

See 42 U.S.C. § 2000e-5(f)(1) (Title VII and ADA); 29 U.S.C. § 633a(d) (ADEA). A similar standard applies to state law claims under Maryland's FEPA. See Md. Code, State Gov't § 20–1013(a)(1). The EEOC charge defines the scope of the plaintiff's right to institute a civil suit. Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005). Thus, "[i]f the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." Id. (citation omitted). For example, "the plaintiff's claim generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex." Id. Nevertheless, courts construe administrative charges liberally because lawyers do not usually complete them. Id.; Chisholm v. United States Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981) ("An administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination."). Accordingly, "if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation," the plaintiff has exhausted his remedies. See Smith v. First Union Nat'l Bank, 202 F.3d 234, 247–48 (4th Cir. 2000) (plaintiff exhausted administrative remedies when both formal complaint and administrative charge alleged management retaliated against her because she complained about supervisor's sexual harassment).

### 1.    Religious and Age Discrimination Claims

Northrop Grumman argues that Sexton's claims alleging discrimination and retaliation based on age and religion must be dismissed for failure to exhaust administrative remedies because Sexton mentioned only disability-related claims in his EEOC charge. (Mot. at 9–11). Sexton does not dispute that the charge does not explicitly mention discrimination or retaliation based on age or religion, but he maintains that by virtue of alleging conduct relevant to sustain a hostile work environment claim, he need not separately exhaust each specific act of discrimination. [11] (See Opp'n at 7–9). At bottom, the Court agrees with Northrop Grumman and will dismiss the claims related to age and religious discrimination, as well as any retaliation claims based on those grounds.

Here, Sexton's EEOC charge states that he submitted reasonable accommodation requests and Northrop Grumman failed to accommodate and retaliated against him based on his requests. (EEOC Charge at 2–4).[12] Sexton identified only his disability as the basis

---

[11] As discussed below, Sexton's hostile work environment claim is procedurally barred for failure to exhaust, and accordingly it cannot cure any procedural bars with respect to his other claims. See supra Part II.B.3.

[12] Ordinarily, a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions, including documents attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). A court may also consider documents referred to and relied upon in the complaint— "even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994).

Here, Sexton referred to the reasonable accommodation requests and the EEOC charge in the Complaint, and there is no dispute that documents relating to the administrative record are integral to his case and authentic. See White v. Mortg. Dynamics, Inc., 528 F.Supp.2d 576, 579 (D.Md. 2007) (finding that documents from the

for the alleged discrimination and retaliation, stating, "I was discriminated against due to my disability and retaliated against for requesting a reasonable accommodation in violation of Americans with Disabilities Act." (EEOC Charge at 3). Because Sexton makes no mention of religion or age in the EOOC charge, he did not exhaust his administrative remedies as to his Title VII, AEDA, or equivalent FEPA claims. See Chacko, 429 F.3d at 509 (explaining that a plaintiff's claim is generally barred when he introduces a new basis of discrimination in formal litigation).

Although his argument is somewhat difficult to parse, Sexton appears to contend that his religious and age discrimination and retaliation claims did not need to be independently exhausted in his EEOC filing because he raised a hostile work environment claim which cured all non-exhaustion issues as to his other claims. (Opp'n at 7–8). According to Sexton, given that "[he] met the exhaustion requirement about the events included in the EEOC filing . . . the entire time period can therefore be considered." (Id.). In support of his argument, Sexton cites to National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), where the Supreme Court held that the plaintiff employee could recover on a hostile work environment theory for acts occurring more than 300 days before the charge was filed with EEOC, as long as the acts were part of the same hostile work environment and at least one act occurred within 300-day period. Morgan, 536 U.S. at 116– 117, 122; (Opp'n at 8). This case is inapposite. In Morgan, the plaintiff's EEOC charge discussed repeated race-based discrimination he endured by the same individuals, so the

administrative record were integral to plaintiff's complaint). Accordingly, the Court will consider these documents in its analysis.

Court found that the EEOC and the defendant were on notice of additional Title VII claims related to the defendant's allegedly racially discriminatory conduct. Morgan, 536 U.S. at 105–107, 120–121. The Court's reasoning does not apply to the instant case. Setting aside whether Sexton even made a hostile work environment claim in his complaint, his charge makes no mention whatsoever of any discrimination based on age or religion, and no reasonable reading of the charge would put the EEOC or Northrop Grumman on notice that Sexton might bring such claims. Sexton's EEOC charge raises only discrete acts of disability discrimination. Sexton's Title VII, AEDA, and analogous FEPA claims (Counts I–III) are patently unrelated to the disability-based discrimination outlined in his charge and thus exceed the scope of the EEOC charge. Sexton failed to exhaust his remedies as to these claims, and they will be dismissed with prejudice as amendment would be futile.

### 2.    Disability Discrimination Claims

Northrop Grumman argues that Sexton's pre-August 2022 disability-related claims must be dismissed as time-barred. (Mot. at 11–13). Sexton argues that he alleges a hostile work environment claim in his Complaint and, as a result, that claim cures any time-bar issues. (Opp'n at 7–9). The Court agrees with Northrop Grumman and will dismiss Count IV in part as time-barred.

Sexton's disability-based claims can be separated into two groups: (1) discrimination that pre-dates August 2022 and (2) discrimination that occurred after August 2022. Northrop Grumman does not seek dismissal of the discrimination that allegedly

occurred after August 2022. Sexton's claims for disability discrimination prior to August 2022 will be dismissed for failure to timely exhaust administrative remedies.

As detailed above, before filing a lawsuit in a federal district court under the ADA, an individual must first file a discrimination charge with the EEOC, and an EEOC charge must be filed within 300 days of the allegedly unlawful employment practice. See 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(d)(1)(B); see also McCullough v. Branch Banking & Tr. Co., 35 F.3d 127, 131 (4th Cir. 1994). Thus, "[w]hen the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal court." McCullough., 35 F.3d at 131. As such, discrete discriminatory acts may not be considered by the Court if they occur outside of the 300–day limitations period. See Morgan, 536 U.S. at 105.

Sexton's claims of disability discrimination and retaliation that allegedly occurred prior to August 2022 constitute discrete acts that occurred more than 300 days before Sexton filed his June 2023 EEOC charge and must be dismissed. See 42 U.S.C. § 2000e–5(e)(1); Morgan, 536 U.S. at 105 ("We hold that the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period."). Sexton's discrimination claims extend back to 2001 and include, inter alia, his 2014 and 2017 requests for remote work and an ergonomic chair and standing desk. (See Compl. ¶¶ 17–18). The statutory period here runs from August 2022 to Sexton's June 2023 filing 300 days later. Any discrete acts of intentional discrimination which allegedly occurred outside this period were not, and could not have been, exhausted by Sexton's EEOC charge.

Accordingly, the ADA and parallel FEPA discrimination claims that predate August 2022 (Count IV in part) were not timely exhausted by Sexton and will be dismissed with prejudice as amendment would be futile.[13]

### 3.    Hostile Work Environment

Sexton also argues in his Opposition that his Complaint states a claim for "hostile work environment." (Opp'n at 7–8). Northrop Grumman argues that Sexton's Complaint fails to adequately allege a hostile work environment because he merely alleges discrete acts of discrimination. (Reply at 9–12). Northrop Grumman also argues that in any event, Sexton's claim alleging hostile work environment must be dismissed for failure to exhaust administrative remedies because Sexton mentioned only specific acts of alleged wrongdoing in his EEOC charge. (Id.). Sexton maintains that his claim surpasses the minimal threshold required to survive a motion to dismiss because his EEOC charge and Complaint present sufficient facts to support a hostile work environment claim. (See Opp'n at 7–8). The Court need not address whether Sexton properly raised a hostile work environment claim in his Complaint since at bottom it is outside the scope of his EEOC charge and must be dismissed.

As discussed above, the EEOC charge defines the scope of the plaintiff's right to institute a civil suit. Chacko, 429 F.3d at 509. For hostile work environment claims specifically, the Fourth Circuit has held that a plaintiff fails to exhaust allegations of a

---

[13] Northrop Grumman does not move to dismiss claims of intentional discrimination or retaliation that occurred between August 15, 2022 and June 2023. These alleged acts took place during the statutory period and accordingly are not time-barred.

broader pattern of misconduct when their administrative charge merely alleges discrete acts of discrimination. Id. "By the same token, if the factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will also be procedurally barred." Id.

Here, Sexton's hostile work environment claim is procedurally barred. Sexton's allegations of discrete acts in his administrative charge are insufficient to support his subsequent allegations of a "broader pattern of misconduct." Chacko, 429 F.3d at 509. The administrative charge states only that Sexton requested a reasonable accommodation in October 2022, and it was approved, but he failed to receive the accommodation despite his "multiple requests" following up on the matter. (EEOC Charge at 2–3). Sexton further alleges he was "retaliated against" for making the request. (Id.). Yet, Sexton's charge is void of the specifics necessary to put Northrop Grumman on notice that its work environment was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [Sexton's] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Sexton failed to indicate the frequency or nature of the discriminatory conduct, and did he did not identify the actors involved. Byington v. NBRS Fin. Bank, 903 F.Supp.2d 342, 351 (D.Md. 2012). While Sexton checked the "continuing action" box on the charge, the charge reads as a single request for accommodation with several follow ups on the approved request—plus unspecified "retaliation." (EEOC Charge at 2–3). Even if the EEOC's ensuing investigation could have discovered Sexton's hostile work environment

claim, it does not excuse his failure to allege a broader pattern of misconduct in his charge. <u>Chacko</u>, 429 F.3d at 509. Accordingly, Sexton's hostile work environment claim (Count V) will be dismissed with prejudice as amendment would be futile.

## III. CONCLUSION

For the forgoing reasons, the Court will grant Defendants' Partial Motion to Dismiss (ECF No. 6). The Court will dismiss with prejudice Sexton's claims for discrimination and retaliation based on age or religion (Counts I–III), Sexton's disability-related claims arising prior to August 2022 (Count IV in part), and Sexton's claims for hostile work environment (Count V). Sexton's claims for disability discrimination and retaliation in violation of the ADA and parallel FEPA provisions for conduct occurring after August 2022 remain (Count IV in part). Defendants will be directed to answer the remaining claims of the Complaint as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. A separate Order follows.

Entered this 5th day of December, 2024.

_____/s/_____
George L. Russell III
Chief United States District Judge

15